ANGELO MONICA, PLAINTIFF-APPELLEE, v. ANGELINA DI BENNEDETTO, DEFENDANT-APPELLANT.

Argued May term, 1925—Decided October 29, 1925.

Landlord and Tenant—Tenant's Suit on Breach of Covenant— Tenant Notified by Building Inspector to Vacate Because of. Unsafe Condition—Lessee Disregarded Notice and was Afterward Ejected by Landlord Who Proceeded to Demolish Building—Landlord Under No Duty in Absence of Contract to. Make Repairs—Measure of Damages—Profits in Illegal Sales in An Illicit Business Cannot be Considered as Basis of Damages—Real Measure of Damage was Difference Between Market Value of the Unexpired Term at Time of Eviction and Rent Received For the Premises.

On appeal from the Essex County Circuit Court.

Before Justices PARKER, MINTURN and BLACK.

For the plaintiff-appellee, *Edward R. McGlynn.*

For the defendant-appellant, *Howe & Davis.*

PER CURIAM.

The action was brought by a tenant against his landlord for a breach of the covenant of quiet enjoyment contained in a lease dated April 1st, 1922, for three years, with an option to renew for two years.

The lease covered the first floor, consisting of a store, and the second floor consisting of living rooms in a building in the city of Orange. The third floor was rented to a stranger to the action.

On March 1st, 1924, the tenant received a notice from the building inspector to vacate the premises on April 1st because of its dangerous condition.

The ordinance under which the notice was given provided that the council must first adjudge the premises unsafe, and then that the building inspector notify the occupants, and then provided for a compulsory removal by the chief of police. This procedure, however, was not followed, and from that fact emanates the trouble. The plaintiff-lessee disregarded the notice, and on April 14th, 1924, the defendant and her son ordered plaintiff out, and proceeded to demolish the building.

The first point contends that there was error in the charge in this direction, viz., "the landlord had to exercise reasonable care to keep the exterior walls and the roof and the foundation of this building in repair."

The court stated, also, that as the building was demised to two tenants, the landlord reserved these parts of the building for the common use of the tenants. This, obviously, was error, because the landlord is under no duty, in the absence of contract, to repair the building for the tenant's use.

The second point, urged as error, is that the court erred in charging that the plaintiff could recover for disbursements made for improvements or repairs, if they found that defendant disregarded her stipulation in the lease to make such repairs in order to place the premises in tenable condition. The difficulty is that a breach of this stipulation was not declared upon, nor were these items claimed as special

damages. At most, if such items were within the contemplation of the parties at the time of the execution of the lease, the plaintiff could only recover for such improvements, in the proportion that the residue of the term bears to the entire term.

It is also urged that the court overruled questions asked of the building inspector, as follows: "Had an application been made to you for a permit for repairs to that building would you have granted it?" "Did you notify the landlord to remove the building?" These questions manifestly were relevant upon the question of damages.

The measure of the special damages (in addition to the $10 moving expense) was the value for the business for the residue of the term as provided in the lease, unless the jury should find from the evidence that the lease would have been terminated sooner by authority of law, or by destruction of the subject-matter.

It is next urged that there was error in overruling questions put to the patrolmen, viz., "Did you find [or get] any wine or whiskey [or other intoxicating liquor] on the premises." Such commodities, obviously, were contraband in law, and profits in their illegal sales cannot be considered as a basis for damages resulting from an illicit business.

It is urged, also, that there was no error in the refusal to charge as follows: "Loss of prospective profits cannot be recovered in this case."

The evidence was that plaintiff was unable, after a reasonable effort, to find another store in the neighborhood, and that he thereupon was obliged to enter another business. Loss of profits, as such, was not the measure of damages. The business was destroyed and not interrupted, and loss of profit was therefore admissible as an element to prove the value of the business. The court charged, however, in effect, that the plaintiff could recover for loss of earnings. Loss of time or earnings was not properly in the case as a subject-matter for damages. Then, too, the evidence of loss or profits was, obviously, uncertain and entirely remote.

The real measure of damage was the difference between the market value of the unexpired term at the time of the eviction, and the rent reserved for the premises. The undisputed evidence was that the building was unsafe, and that it would probably collapse during the spring thaw, thus destroying the subject-matter of the controversy. If the premises had no rental value, and were incapable under the situation of producing a return, no general damages were recoverable.

For these reasons the judgment should be reversed.